UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK TREADWELL, | ) | |
| | ) | No. 19-cv-3179 |
| Plaintiff, | ) | |
| | ) | Judge Kendall |
| v. | ) | |
| | ) | Magistrate Judge McShain |
| Chicago Police Officers | ) | |
| DAVID SALGADO (#16347), | ) | |
| XAVIER ELIZONDO (#1340), and | ) | |
| the CITY OF CHICAGO, Illinois. | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff MARK TREADWELL, by his attorneys Molly Armour, Matthew Madden, and Loevy & Loevy, and complaining of Defendants DAVID SALGADO and XAVIER ELIZONDO, and the CITY OF CHICAGO, Illinois, states as follows:

1.     Defendants David Salgado and Sergeant Xavier Elizondo are disgraced former Chicago Police officers who fabricated false inculpatory evidence to obtain a search warrant and to press charges against Plaintiff Mark Treadwell. Because of Defendants' misconduct Mr. Treadwell was wrongfully incarcerated for four months in Cook County Jail and detained on 24-hour home monitoring for nearly three months while he awaited trial on false charges.

2.     Immediately following Defendants' federal indictment for jarringly similar misconduct in *United States v. Elizondo and Salgado* (N.D. Ill. 18 CR 286), the charges against Mr. Treadwell were dropped and his freedom returned to him.

3.     Mr. Treadwell now seeks justice for the harm that the Defendants have caused and redress for the loss of liberty and hardship he has endured and continues to suffer as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress deprivations of Plaintiff's rights guaranteed by the U.S. Constitution and Illinois law.

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District under 28 U.S.C. 1391(b). Plaintiff resides in this District and the events that are the basis of these claims occurred within this judicial district.

## PARTIES

7.     Plaintiff Mark Treadwell is an African-American resident of Chicago, Illinois. At the time of the allegations contained herein, Plaintiff Treadwell was employed as a basketball referee, a security guard, and was enrolled as a student at Morton College.

8.     Defendants David Salgado and Xavier Elizondo were, at all relevant times herein, sworn police officers in the Chicago Police Department. Each individual Defendant was on duty and acting under color of law and within the scope of his employment with the City of Chicago.

9.     Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois. During all relevant times, the Defendant Police Officers acted as agents and employees of the City of Chicago.

## FACTS

10.     On October 21, 2017, Defendant Officers David Salgado and Sergeant Xavier Elizondo executed a search warrant at 1645 S. Harding Avenue in Chicago. The warrant authorized search of that residence and of Plaintiff Mark Treadwell.

11.     Defendant Salgado obtained that search warrant from a Cook County Circuit Court judge earlier that day based on a sworn complaint he provided to the court that contained materially false and fabricated information for the purpose of establishing probable cause to obtain the warrant.

12.     Prior to procuring that bogus warrant, Defendant Salgado submitted the search warrant complaint to the Cook County State's Attorney and obtained approval.

13.     Defendant Salgado's sworn affidavit falsely asserted that earlier on October 21, 2017 informant "J. Doe" knocked on the front door of the Harding residence, was let inside by Mr. Treadwell, and then purchased cannabis from Mr. Treadwell inside the residence.

14.     That information was wholly fabricated.

15.     As a result of these false, fabricated representations, the Cook County judge signed the search warrant to search Mr. Treadwell and the Harding residence.

16.     The residence at 1645 S. Harding Avenue was owned by Plaintiff Treadwell's father.

17.     On the date the search was executed, there were numerous individuals who possessed keys to the property allowing them access to the residence.

18.     On the evening of October 21, 2017, Plaintiff was at the Harding residence when Defendants Officers approached the house and detained him.

3

19.     On the basis of the bogus search warrant, Defendant Officers and others then gained entrance to the property and searched the residence.

20.     Defendant Sergeant Elizondo knew that the warrant was falsely obtained, but nonetheless supervised and participated in the bogus search.

21.     As a result of the unlawful search, the residence and the property therein were trashed and left in disarray.

22.     Defendant Salgado purportedly discovered and seized firearms and narcotics from the residence during the unlawful search that did not belong to Plaintiff.

23.     After searching the residence pursuant to the illegally obtained warrant replete with false and fabricated allegations, Defendants Salgado and Elizondo arrested Plaintiff and he was transported to the Chicago Police Department's 10th District for further processing.

24.     Together, Defendants Salgado and Elizondo agreed and conspired to bring false allegations and charges against Plaintiff Treadwell.

25.     In pursuit of this conspiracy, Defendant Salgado created official police reports which included false and fabricated inculpatory statements attributed to Mr. Treadwell.

26.     These fabricated statements included the false assertion that Mr. Treadwell sold drugs "because I have to make money to eat."

27.     Also in pursuit of this conspiracy, Defendant Elizondo ratified and served as the approving supervisor for some of these false reports.

28.     As a result of Plaintiff Treadwell's illegal arrest pursuant to the bogus warrant, he was charged with numerous serious firearms and controlled substance offenses and incarcerated.

4

29.     The Defendants failed to advise the State's Attorney that the evidence against Plaintiff was fabricated.

30.     Thereafter, the State's Attorney obtained an indictment against Mr. Treadwell for numerous serious felony offenses for possessing firearms and controlled substances, including six Class X violations, based on the false and fabricated evidence.

31.     None of those items belonged to Mr. Treadwell.

32.     Consequently, Mr. Treadwell was forced to defend himself against these false charges and to hire counsel to defend him.

33.     Unable to make bond, Plaintiff Treadwell remained incarcerated at Cook County Jail, including a period of time in Division 10, a maximum-security division.

34.     But for the Defendant Officers' misconduct, the criminal prosecution of Mr. Treadwell would not have occurred.

35.     In January 2018, Defendants Elizondo and Salgado were relieved of their police powers and removed from street duties by the Chicago Police Department because of allegations that they engaged in similar crimes and other official misconduct while on duty.

36.     Plaintiff was incarcerated until February 20, 2018, when he was released on Cook County Sheriff's electronic home monitoring. Mr. Treadwell remained on electronic monitoring for the duration of the case. While on home monitoring, Mr. Treadwell was subject to 24-hour home incarceration and could not leave his residence without prior authorization.

37.     Defendants Elizondo and Salgado, individually, jointly, and/or in conspiracy, knowingly provided false and fabricated information to the Cook County State's Attorney's Office and to a Cook County judge for the purpose of conducting an

illegal search of 1645 S. Harding Avenue, which resulted in the unlawful arrest and detention of Plaintiff Treadwell for four months, followed by almost three months of restrictive electronic monitoring.

38.     On May 10, 2018, Defendants Elizondo and Salgado were arrested and charged via federal indictment in the Northern District of Illinois. The superseding indictment charges conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable search pursuant to a warrant knowingly obtained though false and fabricated information.

39.     In addition, the indictment specifically alleges that Defendants Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain search warrants so as to seize and steal items from the properties they raided pursuant to these bogus warrants.

40.     Elizondo and Salgado were subsequently convicted.

41.     On May 14, 2018, all state charges against Plaintiff were dismissed and the case was terminated in Plaintiff Treadwell's favor.

42.     Plaintiff was forced to defend himself against these false charges for nearly seven months resulting in the deprivation of his liberty, a loss of personal freedom, physical and emotional pain and suffering, mental anguish, humiliation, degradation, loss of employment, monetary loss, a forced withdrawal as a college student, and required attendance at multiple court dates.

## Policy and Practice of Impunity

43.    At all times relevant to Plaintiff's claims, the City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police Officers fabricated evidence and/or arrested an individual without probable cause. Prior to and during the period in which Plaintiff suffered false arrest and wrongful prosecution, the City of Chicago also operated a dysfunctional disciplinary system for Chicago Police officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

44.    The United States Department of Justice recently issued a report discussing the deficiencies within the Chicago Police Department. On the subject of supervision, the DOJ concluded among other things that "[i]nstead of encouraging the chain of command to instill proper policing tactics and respect for constitutional policing in CPD officers, CPD provides little incentive, or even opportunity, for supervisors to meaningfully guide and direct CPD officers. CPD provides even less incentive for supervisors to hold officers accountable when they deviate from CPD policy and the law. The City has long known that CPD's direct supervision of officers is inadequate, including through the fact that multiple reports in the last two decades have highlighted deficiencies in CPD's supervisory practices. Yet, City and CPD leadership have not made the necessary reforms to CPD's supervision structure and processes, and community and officer safety suffer as a result."

45.     The DOJ "confirmed that CPD's accountability systems are broadly ineffective at deterring or detecting misconduct, and at holding officers accountable when they violate the law or CPD policy." In particular, the Department of Justice found that the City failed to investigate nearly half of misconduct complaints; where investigations did occur, there were "consistent patterns of egregious investigative deficiencies"; and where misconduct complaints are sustained, discipline was inconsistent and unpredictable.

46.     Similarly, the Chicago Police Accountability Task Force ("PTAF") reported in April 2016 that "[g]oing back years, and continuing to the present day, CPD has missed opportunities to make accountability an organizational priority."

47.     Between 2004 and 2016, the City paid more than $500 million to settle or pay judgments in police misconduct cases, without even conducting disciplinary investigations in more than half of the cases, and while recommending discipline in fewer than 4% of those cases.

48.     Between 2011 and 2015, nearly half of complaints filed against Chicago Police officers were not even investigated.

49.     More than 95% of complaints against the Chicago Police are found to be unsustained.

50.     Less than 2% of complaints against the Chicago Police resulted in any discipline.

51.     As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department. In accordance with this code, officers refused to report and

otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

52.     The failure of police supervision and discipline in the City of Chicago during the relevant time period is a fact admitted by City policymakers and Chicago Police officers.

53.     Former Mayor of the City of Chicago Rahm Emanuel has acknowledged that a "code of silence" exists within the Chicago Police Department.

54.     In December 2016, the President of the police officers' union in Chicago admitted that there is a "code of silence" in the Chicago Police Department.

55.     In 2017, the U.S. Department of Justice found that current officers of the CPD and former high-level officials of the CPD acknowledged a "code of silence."

56.     Recently, Mayor Lori Lightfoot urged federal prosecutors to examine the trial of Chicago Police officers accused of covering up the Laquan McDonald shooting, saying "[w]e've got to have transparency and healing."

57.     Even more recently, in January 2020, the interim head of the Chicago Police Department also acknowledged the code of silence, and the current Superintendent acknowledged the code of silence even more recently than that during a speech to new recruits.

58.     The code of silence in the Chicago Police Department has been longstanding.

59.     In the case of *Klipfel v. Bentsen*, No. 94 C 6415 (N.D. Ill.), a federal jury found that as of 1994 the Chicago Police maintained a code of silence that facilitated police misconduct.

60.     In *Obrycka v. City of Chicago*, No. 07 C 2372 (N.D. Ill.), a different federal jury found that, as of February 2007, "the City had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

61.     The same code of silence and ineffective system of police oversight were in place when Plaintiff's constitutional rights were violated.

62.     As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

63.     As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens. This includes Defendants in this case.

### Policy and Practice of Fabricating Evidence

64.     The Chicago Police Department is responsible by virtue of its official policies for scores of miscarriages of justice like that inflicted upon Plaintiffs.

65.     Since 1986, well over 100 cases have come to light in which Chicago police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the arrests and subsequent convictions of innocent persons for serious crimes that they did not commit. This number does not even take into account the scores of false arrests that did not result in conviction.

66.     At all relevant times, members of the Chicago Police Department, including the Defendants in this action, routinely manufactured evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false.

67.     Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, fabricated reports, witness identifications, and other evidence, which was used to wrongfully prosecute Plaintiff.

68.     The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

69.     The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

**COUNT I**
**42 U.S.C. § 1983 Claim**
**Illegal Search**

70.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

71.     Defendant Officers violated Plaintiff Treadwell's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search.

72.     The Defendant Officers violated Plaintiff's rights in that they seized Plaintiff without legal justification and without probable cause and conducted an illegal search of 1645 S. Harding Avenue, Chicago, Illinois without legal justification and without probable cause.

73.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally with malice, willfulness, or reckless indifference to the rights of Plaintiff.

74.     This misconduct was undertaken by Defendant Officers within the scope of their employment and under color of law.

75.     As a result of Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

76.     Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

**COUNT II**
**42 U.S.C. § 1983 Claim**
**Illegal Seizure**

77.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

78.     Defendant Officers violated Plaintiff Treadwell's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure and to due process of law.

79.     Defendant Officers violated Plaintiff's right when they seized Plaintiff without justification and without probable cause.

80.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally with malice, willfulness, or reckless indifference to Mr. Treadwell's rights

81.     The Defendants undertook this misconduct under color of law and within the scope of their employment.

82.     As a result of Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

83.     Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

**COUNT III**
**42 U.S.C. § 1983**
**Deprivation of Liberty without Probable Cause**
**to Institute Criminal Charges Under *Manuel v. City of Joliet***

84.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.     The Defendants caused Plaintiff to be detained and imprisoned without probable cause. Plaintiff was incarcerated for months and then subjected to electronic monitoring and curtailment of his liberty before the criminal charges against him were dismissed and he was free from all carceral controls and restrictions of his liberty.

86.     The misconduct described in this Count was undertaken by the Defendants under color of law and within the scope of their employment.

87.     This misconduct was objectively unreasonable and was undertaken intentionally, with malice, or with reckless indifference to the rights of Plaintiff.

88.     As a result of Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

89.     Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

### COUNT IV
### 42 U.S.C. § 1983
### Due Process Violation

90.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

91.     The Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Mr. Treadwell of his constitutional right to due process and right not to be deprived of liberty without probable cause.

92.     The Defendants manufactured evidence implicating the Defendant in a crime—including the basis for the search warrant and fabricated police reports—knowing the evidence was false.

93.     The Defendants' misconduct caused the unjust and wrongful criminal prosecution of Plaintiff and the deprivation of his liberty without probable cause. Absent this misconduct, the prosecution of Mr. Treadwell could not and would not have been pursued.

94.     Defendants' misconduct violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

95. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

96. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

## COUNT V
### 42 U.S.C. § 1983
### Failure to Intervene Claim

97. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

98. During the violations of Plaintiff Treadwell's constitutional rights, the Defendant Officers stood by without intervening to prevent the misconduct, despite having the opportunity and duty to do so.

99. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Mr. Treadwell's rights.

100. Because of the Defendant Officers' failure to intervene to prevent the violation of his constitutional rights, Mr. Treadwell suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

101. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

## COUNT VI
## 42 U.S.C. § 1983
## Federal Conspiracy Claim

102.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

103.    The Defendants conspired and agreed to falsify a search warrant and frame Mr. Treadwell for criminal violations and to thereby deprive him of his constitutional rights and liberty under color of law, as described in the various paragraphs of this Complaint.

104.    In this manner, the Defendants, acting in concert with other unknown coconspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

105.    In furtherance of the conspiracy, the co-conspirators committed overt acts including fabricating evidence, providing false information in sworn reports, and providing false information to prosecutors in criminal proceedings against Mr. Treadwell, all in violation of both state and federal law.

106.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

107.    As a direct and proximate result of the Defendant Officers' conspiracy, Mr. Treadwell's rights were violated and he suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

108.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

### COUNT VII
### 42 U.S.C. § 1983
### Supervisory Liability

109.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

110.    Defendant Elizondo was a supervisory officer, a sergeant, who approved, condoned, or turned a blind eye to unconstitutional conduct, and therefore, is liable as a supervisor.

111.    Defendant Elizondo knew that the false and fabricated search warrant would be used as justification and authority for entering, occupying, and searching 1645 S. Harding Avenue. In addition, Defendant Elizondo knew or reasonably should have known that Defendant Salgado would violate Mr. Treadwell's constitutional rights and/or knew or reasonably should have known that Defendant Salgado had a pattern of engaging in improper searches.

112.    As a result of the misconduct described in this Count, Mr. Treadwell's rights were violated and he suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

113.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, in the manner described more fully above.

### COUNT VIII
### State Law Claim
### Malicious Prosecution

114.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

115.    Defendant Officers individually, jointly and/or in conspiracy, initiated and continued a malicious prosecution without probable cause against Plaintiff.

17

116.    The prosecution of Plaintiff terminated in his favor.

117.    The Defendant Officers' actions were committed in a willful and wanton manner.

118.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT IX**
**State Law Claim**
**Intentional Infliction of Emotional Distress**

119.    Each paragraph of this Complaint is incorporated as if restated fully herein.

120.    The acts and conduct of the Defendant Officers were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff Treadwell.

121.    Defendant Officers continued to engage in their misconduct as set forth above during the pendency of the Plaintiff's criminal proceeding and continued to conceal their misconduct.

122.    Defendants continued to engage in their misconduct as set forth above during the pendency of the Plaintiff's criminal proceeding and continued to conceal their misconduct.

123.    As a result of the Defendant Officers' actions, Plaintiff Treadwell suffered and continues to suffer loss of liberty, mental anguish, humiliation, degradation,

physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT X
## State Law Claim for Conspiracy

124.    Each paragraph of this Complaint is incorporated as if restated fully herein.

125.    Defendants Salgado and Elizondo jointly acted and/or conspired among and between themselves to falsely imprison Mr. Treadwell and/or to continue that imprisonment, to maliciously prosecute Mr. Treadwell and/or continue that prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

126.    In furtherance of this conspiracy or conspiracies, the Defendants committed the overt acts set forth above.

127.    The conspiracy or conspiracies were and are continuing in nature.

## COUNT XI
## Illinois Law
## *Respondeat Superior* Claim

128.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

129.    While committing the misconduct alleged, Defendants Saldado and Elizondo were employees, members, and agents of the Defendant City of Chicago, acting at all relevant times within the scope of their employment.

130.    Under Illinois law, Defendant City of Chicago is liable as principal for all violations of Illinois state law committed by their agents pursuant to *respondeat superior*.

**COUNT XII**
**Illinois Law**
**Indemnification**

131.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

132.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which its employees are liable within the scope of their employment.

133.    The Defendant Officers were employees, members, and agents of the City of Chicago at all relevant times above.

134.    The Defendant Officers committed the misconduct alleged above under color of law and within the scope of employment as employees of the City of Chicago.


WHEREFORE, Plaintiff MARK TREADWELL demands judgment in his favor against Defendants CITY OF CHICAGO, DAVID SALGADO, and XAVIER ELIZONDO, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against the Defendants Elizondo and Salgado, and any other relief this Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all counts, pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.


Dated:        December 10, 2020                    Respectfully Submitted,

                                                     s/     Molly Armour
                                                    Molly Armour

Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849
armourdefender@gmail.com

s/  Matthew J. Madden

Matthew J. Madden
Attorney At Law, LLC
209 S. LaSalle, 7th Floor
Chicago, IL 60604
(312) 762-9473
matt@mjmaddenlaw.com

*Attorneys for Mark Treadwell*