IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK TREADWELL, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 19 C 3179 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| CHICAGO POLICE OFFICERS DAVID ) | |
| SALGADO (#16347), XAVIER ) | |
| ELIZONDO (#1340), and the CITY OF ) | |
| CHICAGO, Illinois, ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Treadwell brings this case against Chicago Police Officers David Salgado, Xavier Elizondo, and the City of Chicago alleging that Defendants Salgado and Elizondo fabricated inculpatory evidence to obtain a search warrant and to press charges against Plaintiff. Treadwell claims that because of the Defendants' misconduct, he was wrongfully incarcerated for four months in Cook County Jail and detained on 24-hour home monitoring for nearly three months. Defendants were subsequently indicted in federal court for similar misconduct and the charges against Treadwell were dropped. In his Amended Complaint, Treadwell now brings claims under 42 U.S.C. § 1983 for illegal search, illegal seizure, deprivation of liberty without probable cause, violations of Due Process, failure to intervene, federal conspiracy, supervisory liability, and state law claims for malicious prosecution, intentional infliction of emotional distress ("IIED"), conspiracy, *respondeat superior*, and indemnification. Both the Individual Defendants and the City have moved to partially dismiss. The Individual Defendants argue that the Plaintiff's § 1983 claim for Due Process Violations is improperly pled under the Fourteenth Amendment and

1

that Plaintiff's IIED claim is untimely. The City moves to dismiss on the basis that Plaintiff's *Monell* claims are untimely and do not relate back to his original Complaint and because he has failed to properly plead an injury under *Monell*. For the following reasons, both the Individual Defendants' Motion to Dismiss [Dkt. 112] and the City's Motion to Dismiss [Dkt. 120] are denied.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations are taken from Treadwell's Amended Complaint (Dkt. 99) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On October 21, 2017, Defendant Officers David Salgado and Sergeant Xavier Elizondo executed a search warrant at 1645 S. Harding Avenue in Chicago. (Dkt. 99 ¶ 10). The warrant authorized search of that residence and of Plaintiff Mark Treadwell. (*Id.*). Salgado obtained that search warrant from a Cook County Circuit Court judge earlier that day based on a sworn complaint he provided to the court that contained fabricated information for the purpose of establishing probable cause to obtain the warrant. (*Id.* ¶ 11). Defendant Salgado submitted the search warrant complaint containing false information to the Cook County State's Attorney and obtained approval. (*Id.* ¶ 12). Salgado's sworn affidavit falsely stated that earlier on October 21, 2017 informant "J. Doe" knocked on the front door of the Harding residence, was let inside by Treadwell, and then purchased cannabis from Treadwell inside the residence, which was a complete fabrication. (*Id.* ¶¶ 13–14). As a result of these fabrications, the Cook County judge signed the search warrant to search Treadwell and the Harding residence. (*Id.* ¶ 15). The residence

at 1645 S. Harding Avenue was owned by Plaintiff Treadwell's father, although there were numerous individuals who possessed keys to the property allowing them access to the residence. (*Id.* ¶¶ 16–17).

On the evening of October 21, 2017, Plaintiff was at the Harding residence when Defendants Officers approached the house and detained him. (*Id.* ¶ 18). Using the fabricated search warrant, Defendant Officers and others then gained entrance to the property and searched the residence. (*Id.* ¶ 19). Sergeant Elizondo knew that the warrant was falsely obtained, but nonetheless supervised and participated in the resulting search. (*Id.* ¶ 19). Defendant Salgado allegedly discovered and seized firearms and narcotics from the residence during the unlawful search that did not belong to Plaintiff. ((*Id.* ¶ 22).

After searching the residence pursuant to the unlawful warrant, Defendants Salgado and Elizondo arrested Plaintiff and he was transported to the Chicago Police Department's 10th District for further processing. (*Id.* ¶ 23). Together, Defendants Salgado and Elizondo agreed and conspired to bring false allegations and charges against Plaintiff Treadwell. (*Id.* ¶ 24). In furtherance of this conspiracy, Defendant Salgado created official police reports which included false and fabricated inculpatory statements attributed to Treadwell. (*Id.* ¶ 25). These fabricated statements included the false assertion that Treadwell sold drugs "because I have to make money to eat." (*Id.* ¶ 26). Defendant Elizondo ratified and served as the approving supervisor for some of these false reports. (*Id.* ¶ 27).

As a result of Treadwell's arrest, he was charged with numerous serious firearms and controlled substance offenses and incarcerated. (*Id.* ¶ 28). The Defendants did not advise the State's Attorney that the evidence against Plaintiff was fabricated. (*Id.* ¶ 29). The State's Attorney subsequently obtained an indictment against Treadwell for serious felony offenses for possessing

firearms and controlled substances, including six Class X violations, based on the false and fabricated evidence, although none of these items belonged to Treadwell. (*Id.* ¶¶ 30-31). Treadwell was forced to defend himself against these false charges and to hire counsel to defend him. (*Id.* ¶ 32). Treadwell was unable to make bond and remained incarcerated at Cook County Jail. (*Id.* ¶ 33)

In January 2018, Defendants Elizondo and Salgado were relieved of their police powers and removed from street duties by the Chicago Police Department because of allegations that they engaged in similar crimes and other official misconduct while on duty. (*Id.* ¶ 35). Plaintiff was incarcerated until February 20, 2018, when he was released on Cook County Sheriff's electronic home monitoring, where he was subject to 24-hour home incarceration and could not leave his residence without prior authorization. (*Id.* ¶ 36). On May 10, 2018, Defendants Elizondo and Salgado were arrested and charged via federal indictment in the Northern District of Illinois. (*Id.* ¶ 38). The superseding indictment charged conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable search pursuant to a warrant knowingly obtained though false and fabricated information. (*Id.*). The indictment specifically alleges that Defendants Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain search warrants so as to seize and steal items from the properties they raided pursuant to these bogus warrants. (*Id.* ¶ 39). Elizondo and Salgado were subsequently convicted, and on May 14, 2018, all state charges against Plaintiff were dismissed and the case was terminated in Treadwell's favor. (*Id.* ¶¶ 40–41).

Plaintiff further alleges the City has routinely failed to investigate cases in which Chicago Police Officers fabricated evidence and arrested an individual without probable cause, amounting to approbation of this behavior and the code of silence that protects these officers. (*Id.* ¶¶ 43–69). Treadwell argues that Defendants' misconduct described above was undertaken pursuant to the policies, practices, and customs of the City of Chicago.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). This means that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010)).

## DISCUSSION

Defendants Salgado and Elizondo have jointly moved to dismiss Plaintiff's unlawful detention claim under the Fourteenth Amendment and his IIED claim. The City has moved to dismiss Plaintiff's *Monell* claim, arguing that the *Monell* claim is outside the statute of limitations or, in the alternative, fails to state a claim. The Court will analyze each in turn.

5

I. **Unlawful Detention under the Fourteenth Amendment**

The Individual Defendants' first move to dismiss Plaintiff's claim for unlawful detention under the Fourteenth Amendment (Count IX) because pretrial detention claims are governed by the Fourth Amendment, not the Fourteenth Amendment. Indeed, the Seventh Circuit has affirmed that a § 1983 claim for unlawful pretrial detention rests exclusively on the Fourth Amendment. *Young v. City of Chic.*, 987 F.3d 641, 646 (7th Cir. 2021); *Lewis v. City of Chic.*, 914 F.3d 472, 478 (7th Cir. 2019).

However, Plaintiff points to the recent case of *McDonough v. Smith*, 139 S. Ct. 2149 (2019), which he claims casts doubt on the Seventh Circuit's determination that a wrongful pretrial detention claim can be only be brought under the Fourth Amendment. Recently, two courts in this District have confronted this exact scenario where the Plaintiff pled an unlawful pretrial detention claim based on fabricated evidence under the Fourteenth Amendment, in addition to the Fourth Amendment claim. *See Mack v. City of Chicago*, 19 C 4001, 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020) (Pallmeyer, J.) (declining dismissal of Fourteenth Amendment due process claim that shared same factual underpinning as Fourth Amendment claim); *Culp v. Flores*, 454 F.Supp.3d 764, 770 (N.D. Ill. Apr. 15, 2020) (Feinerman, J.) (same). Judges Pallmeyer and Feinerman both decided dismissal was unwarranted as discovery on the plaintiff's Fourth Amendment claim would be coextensive with discovery on any claim that his detention violated due process under the Fourteenth Amendment. Their reasoning is sound. Defendants have not moved to dismiss Plaintiff's *Manuel* claim under the Fourth Amendment and discovery will proceed on this claim; therefore, any Fourteenth Amendment discovery will be coextensive. Defendants argue that the more recent Seventh Circuit case of *Young* should bind this Court and that both *Mack* and *Culp* are non-binding. Defendants are right: it is a fundamental principle that

this Court is bound by Seventh Circuit precedent and not other district courts. However, while *Young* reaffirmed *Lewis*, it did not discuss the question left open about the availability of relief for unlawful pretrial detention in *McDonough*. Both Judge Feinerman and Judge Pallmeyer confronted *Lewis* and acknowledged that they are bound by the Seventh Circuit. However, given the difficult nature of the question, the Court need not resolve whether a claim under the Fourteenth Amendment is indeed viable. The Court declines to dismiss the Fourteenth Amendment claim on the pleadings, as it will have an opportunity to address the claim when Defendants renew their challenge at summary judgment.

## II. Plaintiff's IIED Claim

The Individual Defendants move to dismiss Plaintiff's IIED claims for being untimely. It is undisputed that IIED claims are subject to a one-year limitations period. 745 ILCS 10/8–101(c). Plaintiff first filed this claim on May 10, 2019. (*See* Dkt. 1). The parties disagree when Plaintiffs' IIED claims accrued such that the statute of limitations began to run. Defendants argue that the limitations period began to run when Plaintiff was arrested by Defendant Officers on October 1, 2017. Plaintiffs, on the other hand, argue that under *Heck v. Humphrey*, 512 U.S. 477 (1994), the limitations period did not begin to run until their convictions were vacated in 2018. *McDonough v. Smith*, 139 S.Ct. 2149 (2019) additionally explained that where there is no conviction, a § 1983 Plaintiff cannot bring federal claims that lie in malicious prosecution until the criminal proceedings are terminated in the Plaintiff's favor. Here, the criminal proceedings did not terminate in Plaintiff's favor until May 14, 2018. (Dkt. 99 ¶ 41).

Defendants primarily rely upon *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013). In *Bridewell*, the Seventh Circuit affirmed the district court's dismissal on statute of limitations grounds of the plaintiff's IIED claim, explaining that "a claim of intentional infliction of emotional

7

distress in the course of arrest and prosecution accrues on the date of the arrest." *Id.* at 678. As Plaintiff acknowledges, there is a split in authority among district courts in this Circuit and the cases Defendants have cited have refused to apply the delayed accrual rule to the IIED claims. *See e.g. Batchelor v. City of Chicago*, 18 C 8513, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020), ; *Melango v. Podlasek*, 13 C 4924, 2019 WL 1254913, at *15 (N.D. Ill. March 19, 2019); *Friends-Smiley v. City of Chicago*, 16-CV-5646, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016).

However, other courts confronting this issue have applied the delayed accrual rule to the IIED claims, citing *Heck*. *See e.g. Baker v. City of Chicago*, 483 F.Supp.3d 543, 560 (N.D. Ill. 2020); *Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *6-7 (N.D. Ill. Sept. 26, 2019); *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1042–43 (N.D. Ill. 2018); *Hill v. City of Chicago*, Nos. 19 C 6080, 19 C 6081, 2020 WL 509031, at *5 (N.D. Ill. Jan. 31, 2020). Not to mention, in *Andersen v. City of Chicago*, No. 16-cv-1963, 2019 WL 6327226, at *6 (N.D. Ill. Nov. 26, 2019), this Court declined to dismiss Plaintiff's IIED claim for untimeliness under the *Heck* doctrine. This Court's previous reasoning is instructive. As Plaintiff points out, there are at least 10 other claims that are moving forward that were timely filed and based on the same events surrounding Plaintiff's arrest. There would be little sense in holding Plaintiff cannot bring § 1983 claims for malicious prosecution until the criminal proceedings are terminated in the Plaintiff's favor but then require him to file a claim for IIED within a year of his arrest. The Court denies dismissal of Plaintiff's IIED claim under the statute of limitations.

### III. The City's Motion to Dismiss Plaintiff's *Monell* claim

#### A. Timeliness of Plaintiff's *Monell* Claim

The City first moves to dismiss Plaintiff's *Monell* claim arguing that it is untimely under the two-year statute of limitations. The City further argues that the *Monell* claims, which were added to the Amended Complaint, which was filed on December 10, 2020, do not relate back to the original Complaint. Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred; in Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016); 735 ILL. COMP. STAT. 5/13-202. *Monell* claims are also governed by this two-year statute of limitations. *See Bowers v. Dart*, 20-1516, 2021 WL 2450373, *3 (7th Cir. June 16, 2021). Plaintiff alleges that he was wrongfully arrested by the Defendant Officers on October 21, 2017. (Dkt. 99 ¶22). Plaintiff initially filed suit on May 10, 2019 alleging claims of *respondeat superior* and indemnification against the City, but not alleging any *Monell* claims. (Dkt. 1). Importantly, the parties do not dispute the timeliness of these original claims.

The City argues that because Plaintiff filed his Amended Complaint containing the *Monell* claim on December 10, 2020, the *Monell* claim is untimely because he raised this claim against the City more than three years after the arrest and more than two years after the underlying criminal case was dismissed. Plaintiff argues, however, that his Amended Complaint relates back to his original Complaint. The Federal Rules require new claims to arise "out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *Westbrook v. Delaware County Sheriff*, 790 Fed. App'x. 807, 810 (7th Cir. 2019).

9

Plaintiff argues that since he had initially filed direct claims against the City, namely for indemnification and *respondeat superior*, that arose out of his arrest and subsequent unlawful pretrial detention, his *Monell* claim sufficiently satisfies Rule 15(c)(1)(B). A number of fellow judges in the Northern District of Illinois have allowed *Monell* claims to proceed, especially where the plaintiff had already brought claims against the city for either *respondeat superior* or indemnification. *See e.g. Armour v. Country Club Hills*, 11 C 5029, 2014 WL 63850, at *5–6 (N.D. Ill. Jan. 8, 2014) (finding Rule 15(c) met where plaintiff brought claims against the city for *respondeat superior* and indemnification in his original compliant and collecting cases that found same); *Hernandez v. City of Chicago*, 16 C 8875, 2016 WL 6948386, at *1 (N.D. Ill. Nov. 28, 2016); *Lewis v. City of Chicago*, 235 F. Supp. 3d 1029, 1032 (N.D. Ill. 2016); *Moore v. City of Chicago*, 02 C 5130, 2004 WL 1385827, at *1 (N.D. Ill. June 17, 2004); *Estate of Keys, By & Through Doxie v. City of Harvey*, 92 C 2177, 1994 WL 687479, at *3 (N.D. Ill. Dec. 8, 1994).

Treadwell originally brought claims against the City for indemnification and *respondeat superior* arising out of the constitutional deprivations he allegedly suffered for his wrongful arrest and pretrial detention. His *Monell* claims arise out of that same alleged constitutional harm that he suffered and that he described in his original Complaint. Therefore, his *Monell* claims meet the Rule 15(c)(1)(B) requirements for relation back. The Court accordingly declines to dismiss Plaintiff's *Monell* claims for untimeliness.

### B. Plaintiff's *Monell* Claim and Pleading Requirements

Finally, the City argues that Plaintiff has failed to state a *Monell* claim under Rule 12(b)(6). The City argues that Plaintiff's Amended Complaint has no well-pled allegations of a widespread unconstitutional practice, that Plaintiff fails to allege "deliberate indifference" by municipal policymakers, and the Amended Complaint fails to meet *Monell*'s rigorous causation

10

requirements. Interestingly, the City continually points to Plaintiff's copious allegations and then states in conclusory fashion that they are somehow insufficient to state a claim. In doing so, the City's briefing only highlights the numerous well-pleaded allegations Plaintiff's Amended Complaint contains.

To state a claim under *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 –95 (1978), the plaintiff must plead factual content that would allow the Court to draw a reasonable inference that a plaintiff must show: "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity [ ] itself caused the constitutional violation at issue.")

The City's first argument essentially focuses on this first element: arguing that Plaintiff has insufficiently alleged a *de facto* unwritten policy of permitting its officers to fabricate probable cause by allowing a culture without accountability. To satisfy this element, the plaintiff has to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011) (quoting *Darchak v. City of Chi. Bd. of Ed.*, 580 F.3d 622, 629 (7th Cir.2009)).

Here, Plaintiff has pled twenty-six paragraphs establishing that this was a widespread, though unwritten, custom or practice. Some of Plaintiff's well-pleaded allegations include: that the U.S. Department of Justice issued a report discussing how the Chicago Police Department

11

engages in an inadequate level of supervision of its officers, which has been long-known, but that the City has not yet made the necessary changes, (Dkt. 99 ¶¶ 44–45); that municipal policymakers and department supervisors condone and facilitate a code of silence, wherein officers refused to report and otherwise lied about misconduct their colleagues committed, including the misconduct at issue in this case, which many prominent public officials have openly acknowledged, (*id.* ¶¶ 51, 53– 61); that Chicago police officers engage in misconduct, which the City has settled or pay judgments, often without conducting any disciplinary investigations, (*id.* ¶¶ 43, 47– 50); that CPD officers routinely manufacture evidence against innocent people, including by coercion, manipulation, pressuring, threatening, and offering inducements to suspects and witnesses to obtain false statements, (*id* ¶ 66); that since 1986, there have been well over 100 cases in which Chicago police officers fabricated evidence and/or suppressed exculpatory evidence in cases leading to the wrongful conviction of innocence people, (*id.* ¶65); that due to the City's policies and practices, Chicago police officers, including the Individual Defendants, act with impunity when they violate the constitutional and civil rights of citizens, (*id.* ¶ 63); and finally that the Individual Defendants acted in line with the City's policies and practices of condoning the manufacturing of evidence against individuals when they fabricated reports, witness identifications, and other evidence that was used to wrongfully prosecute Plaintiff, (*id.* ¶ 67).

While the City attempts to isolate the individual allegations and argue that they are insufficient on their own, the Amended Complaint, read as a whole, sufficiently alleges that there was a widespread policy or custom that has been in existence for decades that allowed the Individual Defendants here to act with impunity.

Next, the City argues that the Plaintiff has failed to allege "deliberate indifference" by municipal policymakers and that causation has not been met. As to the City's causation arguments,

once again, the City parses allegations but fails to consider the Amended Complaint as a whole. The City argues that the Amended Complaint is "devoid of any facts or information establishing how the DOJ Report, PATF Report, various statements by public officials, or other lawsuits proximately caused Plaintiff's alleged constitutionally injur[y]." (Dkt. 120 at 11). The City cites to two cases that held that a DOJ report and a code of silence, alleged by themselves, are insufficient to allege a causal connection. (*Id.* citing *Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018); *Joshua Page v. City of Chicago*, No. 19-CV-07431, 2021 WL 365610, at *3 (N.D. Ill. Feb. 3, 2021)). Perhaps if these were Plaintiff's only allegations, the Court would be inclined to follow its colleagues in dismissing the *Monell* claim for failure to allege causation. But Plaintiff has connected the harm Elizondo and Salgado caused to Plaintiff with specific allegations that they framed other citizens, that other CPD officers framed over 100 people since 1986, and that the City routinely fails to investigate and discipline officers despite knowing about these constitutional violations. Plaintiff's allegations pertaining to the DOJ Report and the Code of Silence do not go to the element of causation, but rather to indicate that this was a widespread custom within the CPD. Given this, the Court denies dismissal based on causation.

Finally, the City moves to dismiss Plaintiff's *Monell* claim because Plaintiff has failed to allege deliberate indifference. To sustain a *Monell* claim, "a plaintiff must show that … the municipality's policymakers were 'deliberately indifferent as to the known or obvious consequences' of that practice*." Thomas v. Cook County Sheriff's Dep't*., 604 F.3d 293, 303 (7th Cir. 2010) (citing *Gable v. City of Chi*., 296 F.3d 531, 537 (7th Cir. 2002)). In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Id.*

The City states that Plaintiff has failed to allege deliberate indifference, but the crux of their argument is that they dispute that the City was deliberately indifferent on the facts. Plaintiff has alleged in detail that the City failed to investigate complaints of misconduct and rarely disciplines accused officers (including the Individual Defendants), which City leaders have condoned. (Dkt. 99 ¶ 43, 45, 48, 62). Yet the City ignores the pleadings and instead argues about underlying facts that are not presently before the Court, including the City's "publicly known robust reforms the City adopted before Plaintiff's arrest." (Dkt. 120 at 13).

In considering a motion to dismiss, the Court looks at the well-pleaded allegations contained in Plaintiff's Complaint. Here, the City does not deny that Plaintiff's allegations plausibly assert a claim for deliberate indifference, instead arguing that because the City adopted reforms, they could not factually be deliberately indifferent. Should the City's reforms come in during discovery, the City may properly put forth those facts in a motion for summary judgment. At this stage, however, the Court denies dismissal of Plaintiff's *Monell* claim for failure to allege causation and deliberate indifference.

**CONCLUSION**

Plaintiff has sufficiently pled an § 1983 for Due Process Violations under the Fourteenth Amendment and Plaintiff's IIED claim is timely. Additionally, Plaintiff's *Monell* claims are timely because they relate back to his original Complaint. Finally, Plaintiff has adequately alleged an injury under *Monell*. Therefore, the Individual Defendants' Motion to Dismiss [Dkt. 112] and the City's Motion to Dismiss [Dkt. 120] are denied.

_____
Virginia M. Kendall
United States District Judge

Date: July 23, 2021