## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK TREADWELL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 19 C 3179 |
| | ) | |
| CHICAGO POLICE OFFICERS DAVID | ) | |
| SALGADO (#16347), XAVIER | ) | Judge Virginia M. Kendall |
| ELIZONDO (#1340), and the CITY OF | ) | |
| CHICAGO, Illinois, | ) | |
| | ) | |
| *Defendants*. | ) | |

### MEMORANDUM OPINION & ORDER

Plaintiff Mark Treadwell filed a civil rights action against Chicago Police Officers David Salgado and Xavier Elizondo (the "Defendant Officers") and the City of Chicago (the "City"). The Complaint alleges that the Defendant Officers falsified a search warrant application which ultimately led to Treadwell's unlawful arrest and detention. (*See* Dkt. 99 ¶¶ 10–14, 37). In relevant part, Plaintiff brings claims under 42 U.S.C. § 1983 against the Defendant Officers for illegal search and seizure; deprivation of liberty without probable cause; violation of Due Process; failure to intervene; conspiracy to deprive Plaintiff's Constitutional rights; and supervisory liability as to Defendant Elizondo. (*Id.* ¶¶ 70–113 (pleading Counts I–VII)). Treadwell also sues the City, alleging that its police department's policies and practices render it liable for the underlying constitutional violations in this case pursuant to *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). (*E.g.*, *id.* ¶¶ 43–69). The City now moves to bifurcate and stay discovery on Treadwell's *Monell* claims. (Dkt. 151). The City also asks the Court to enter its proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago." (*Id.*; *see*

*also* Dkt. 151-C). For the reasons set forth below, the Motion to Bifurcate and Stay Discovery and Trial on Plaintiff's *Monell* Claims [151] is granted.

## BACKGROUND

The following factual overview is taken from Plaintiff's Amended Complaint, (Dkt. 99), and is presumed true only for purposes of resolving the current motion. *See, e.g.*, *Veal v. Kachiroubas*, No. 12-cv-8342, 2014 WL 321708, at *1 n.2 (N.D. Ill. Jan. 29, 2014). Treadwell alleges that the Defendant Officers agreed and conspired to bring false allegations and charges against him. (Dkt. 99 ¶¶ 24–25). In particular, he maintains that the Defendant Officers attained a warrant to conduct a search of 1645 S. Harding Avenue on October 21, 2017, having provided materially false and fabricated information to the Cook County State's Attorney's Office and to a Cook County judge. (*Id.* ¶¶ 11, 13, 15, 29, 37). That same evening, the Defendant Officers searched and seized firearms and narcotics from the property. (*Id.* ¶¶ 19, 22). The Defendant Officers also arrested Treadwell as a result of the unlawful search. (*Id.* ¶¶ 18, 19, 23). Treadwell was subsequently charge with numerous felony offenses for possessing firearms and controlled substances, including six Class X violations, based on the Defendant Officers' false and fabricated evidence. (*Id.* ¶ 30). Unable to make bond, Treadwell was placed in the Cook County Jail awaiting trial, including in a maximum-security division for a period of time. (*Id.* ¶ 33). Treadwell was released on February 20, 2018 but remained on electronic home monitoring for an additional three months during the pendency of his case. (*Id.* ¶ 36). Treadwell could not leave his residence without prior authorization while on home monitoring. (*Id.*). He maintains that his criminal prosecution would not have occurred but for the Defendant Officers' misconduct. (*Id.* ¶ 34).

In January 2018, both Defendant Officers were relieved of their police powers and removed from street duties by the Chicago Police Department ("CPD") following allegations that they

2

engaged in similar and other misconduct while on duty. (*Id.* ¶ 35). On May 10, 2018, the Defendant Officers were arrested and federally charged with conspiracy to commit theft, embezzlement, obstruction of justice, making false statements to law enforcement, and conspiracy to deprive Chicago residents of the right to be free from unreasonable search. (*Id.* ¶ 38). The indictment specifically alleges that Defendant Officers submitted materially false search warrant applications, and that they induced informants to provide false information to Cook County judges to fraudulently obtain search warrants. (*Id.* ¶ 39). The Defendant Officers were found guilty and convicted of these charges. (*Id.* ¶ 40).

On May 14, 2018, all state charges against Treadwell were dismissed and the case was terminated in his favor. (*Id.* ¶ 41). Treadwell asserts that because of Defendant Officers' misconduct, he suffered deprivation of his liberty, loss of personal freedom, physical and emotional pain and suffering, mental anguish, humiliation, degradation, loss of employment, monetary loss, forced withdrawal from college, and loss of time from required attendance at multiple court dates. (*Id.* ¶ 42).

In this Section 1983 lawsuit, Plaintiff alleges that the Defendant Officers violated his constitutional rights in connection with his arrest and detention on October 21, 2017. (*Id.* ¶¶ 70–134). In addition, Treadwell alleges that the City is liable under *Monell*, 436 U.S. at 690, because his rights were violated as a result of official policies and practices. (*E.g.*, *id.* ¶¶ 43–69). The City has moved to (1) bifurcate Treadwell's *Monell* from Plaintiff's claims against the Defendant Officers; (2) stay discovery and postpone trial as to the *Monell* claim until the claims as to the Defendant Officers are resolved, and (3) enter the City's proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago." (Dkt. 151 at 15).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 42(b), the Court has considerable discretion to separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy. FED. R. CIV. P. 42(b); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Chlopek*, 499 F.3d at 700 (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. FED. R. CIV. P. 26(d); *see also, e.g.*, *Horton v. City of Chicago*, No. 13-cv-6865, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015).

Motions for bifurcation are "now commonplace" and "there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *See, e.g.*, *Allison v. Gallagher*, No. 10-cv-6887, 2012 WL 4760863, at *1 (N.D. Ill. Oct. 5, 2012) (quoting *Elrod v. City of Chicago*, No. 06-cv2505, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007)); *see also, e.g.*, *Rodriguez v. City of Chicago*, No. 17-cv-7248, 2018 WL 3474538, at *2 (N.D. Ill. July 19, 2018). "Such motions and the inclination of many judges to grant them stems in large part from the recognition that, often, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.' " *E.g.*, *Horton*, 2016 WL 316878, at *2 (quoting *Moore v. City of Chicago*, No. 02-cv5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007)); *see also, e.g.*, *Peterson v. City of Chicago*, No. 14-cv-9881, 2015 WL 13882813, at *2 (N.D. Ill. Oct. 19, 2015);

4

*Allison*, 2012 WL 4760863, at *1.  Deciding whether to bifurcate a plaintiff's *Monell* claim is left to the Court's sound discretion and "must be done on case-by-case basis, looking at the specific facts and claims presented."  *See, e.g.*, *Rodriguez*, 2018 WL 3474538, at *2; *see also Estate of Loury by Hudson v. City of Chicago*, No. 16-cv-04452, 2017 WL 1425594, at *2 (N.D. Ill. Apr. 20, 2017).

## DISCUSSION

The City argues bifurcation of Treadwell's *Monell* claims is appropriate under Federal Rule of Civil Procedure 42 because bifurcation best serves the interests of efficient litigation and judicial economy and will assist in eliminating the risk of unfair prejudice and potential unnecessary expense to the parties without prejudicing Plaintiffs' ability to recover compensatory damages. (Dkt. 151).  In support of its Motion, the City argues that Treadwell's *Monell* claims are dependent first on Treadwell's claims against the Defendant Officers.  (*Id.* at 5–8).  The City has offered to consent to limited entry of judgment against it should the jury determine the Defendant Officers committed a violation of Plaintiff's constitutional rights in one of the ways alleged in the complaint – even if the Officers are protected from civil liability due to qualified or absolute immunity, without Plaintiff having to prove any of the elements required to hold the City liable under *Monell*. (*Id.* at 7; Dkt. 151-C ¶ 6).  Among other things, Treadwell responds that his claims against the City are not dependent on a verdict against the Defendant Officers and that bifurcation would increase the cost of litigation.  (Dkt. 180 at 8–9).  Treadwell further disputes that the City would be prejudiced by allowing his claims to proceed to trial together, whereas bifurcating the *Monell* claims would prejudice Treadwell's case before the jury.  (*Id.* at 12).  For the reasons set forth below, bifurcation is appropriate in this case.

**1. Judicial Estoppel**

As an initial matter, Treadwell argues that the City is judicially estopped from seeking to bifurcate his *Monell* claims. (*Id.* at 6). He rests this argument on the fact that "the parties jointly requested an extension of the discovery schedule" after Treadwell added *Monell* claims to his amended complaint. (*Id.*). As such, in Treadwell's view, "the City should not be permitted to now take the opposite position by arguing that *Monell* discovery should not occur at all." (*Id.*).

Judicial estoppel is an equitable doctrine intended to avoid situations where a litigant prevails twice on inconsistent theories. *In re Airadigm Communications, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010). Courts have "identified at least three pertinent factors" in weighing the application of the judicial estoppel, namely: "(1) whether the party's later position was '*clearly inconsistent*' with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would *derive an unfair advantage* or impose an unfair detriment on the opposing party if not estopped.' " *Id.* (emphasis added).

The City's request for bifurcation is not "clearly inconsistent" with its earlier request (jointly filed with Plaintiff) to extend the discovery deadline. In one respect, the parties' joint motion to extend discovery was filed before the City had even filed a responsive motion. (*Compare* Dkt. 107 (filed 12/23/2020), *with* Dkt. 120 (filed 2/12/2021)). Neither party explicitly set forth or guaranteed in the joint motion that it *would* engage in *Monell* discovery at all.

Next, the City stands to gain no "unfair advantage" via the instant motion. The parties' joint motion to extend discovery conferred benefits to both the City and Treadwell alike. For example, Treadwell reported that the parties were unable to schedule a remote deposition with Defendant Salgado due to COVID-related complications, and so required additional time on that

front. (Dkt. 107 ¶ 9). Moreover, the joint motion plainly states that none of the parties would have been able to complete fact discovery by their initial deadline. (*Id.* ¶ 8). For these reasons, judicial estoppel does not bar the City's motion.

## 2. Split or Inconsistent Verdicts

The City argues that bifurcation is appropriate because Treadwell must succeed in his action against the Defendant Officers before he can obtain a judgment against the City on his *Monell* claims. (Dkt. 151 at 6). Where a plaintiff's alleged harm "was not caused by any *de facto* policies *independent of any officer's actions*," a constitutional violation by an individual officer must be found before a municipality may be held liable under *Monell*. *See, e.g.*, *Harris v. City of Chicago*, No. 14-cv-4391, 2016 WL 3261522, at *3 (N.D. Ill. June 14, 2016) (emphasis added); *see also, e.g.*, *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080–81 (N.D. Ill. 2018). Under certain circumstances, "a municipality can be held liable under *Monell* even when its agents are not," although this is only possible where such a finding would not create an "inconsistent verdict." (Dkt. 151 at 5 (citing *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)). To determine whether the City's liability is dependent on that of its Defendant Officers', the Court "must look to the nature of the constitutional violations, the theory of municipal liability and the defenses set forth." *Thomas*, 604 F.3d at 305.

Treadwell's *Monell* claims relate in part to the City's alleged policy or practice of allowing members of the CPD to act with impunity. (*See* Dkt. 99 ¶¶ 43–63). First, Treadwell alleges that the City fails to supervise and appropriately discipline its police officers for misconduct or otherwise maintain an effective system of police oversight. (*Id.* ¶¶ 52–53, 62; *see also id.* ¶¶ 44–45 (citing U.S. Department of Justice report discussing the deficiencies within the CPD, which recommended reform to CPD's "supervision structure and processes" and accountability

systems)). In addition, he maintains that the City facilitates a "code of silence" as to misconduct within the CPD. (*Id.* ¶¶ 51 ("In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues[.]")). However, even crediting these claims, any alleged harm to Treadwell flowing from such policies hinges on the actions of individual officers. That is to say, the City's purported failure to supervise its police force does not proximately cause harm to the public in and of itself. Although such harm may ultimately trace back to workforce training failures, and the like, the harm itself only comes to fruition through an officer's affirmative actions. *See, e.g.*, *Ezell v. City of Chicago*, No. 18-cv-1049, 2019 WL 3776616, at *4 (N.D. Ill. Aug. 12, 2019) (explaining that harm caused by City's failure to properly discipline and supervise an officer could only manifest through the officer's actions); *Harris*, 2016 WL 3261522, at *3 (same regarding City's alleged policy or practice of "actively covering up illegal interrogations and confessions"); *Claxton v. City of Chicago*, No. 14-cv-10076, 2015 WL 5304630, at *1 (N.D. Ill. Sept. 9, 2015) (same regarding City's alleged policies of failing to adequately train and supervise officers; failure to punish and discipline misconduct within the CPD; and allowing a code of silence to exist within the CPD); *Veal*, 2014 WL 321708, at *4 (same where City allegedly "failed to adequately train individual officers or failed to act in response to repeated complaints of its officers' violations"). As such, the Defendant Officers must be found to have committed a constitutional violation before the City may be held liable under *Monell* on this ground.

The same conclusion applies to the City's alleged policy or practice of fabricating false evidence and/or suppressing exculpatory evidence in criminal proceedings. (*See* Dkt. 99 ¶¶ 64–69). Treadwell alleges that the City perpetuates CPD officers' routine practice of "manufactur[ing] evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering

inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false." (*Id.* ¶¶ 66, 68). Again, even if the City were to have such a policy or practice, any harm caused therefrom could only manifest itself through individual officers' actions. *See, e.g.*, *Williams*, 315 F. Supp. 3d at 1080–81 (finding that any harm caused by City's alleged policies or practices of permitting officers to coerce false testimony, create false investigative reports, and fail to preserve and produce exculpatory evidence could only manifest itself through officers' actions); *Andersen v. City of Chicago*, No. 16-cv-1963, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016) (same regarding City's policy or practice of permitting its officers to coerce false confessions); *Harris*, 2016 WL 3261522, at *3 (same regarding City's alleged policy or practice of fabricating evidence including through "illegal interrogations and confessions"); *Taylor v. Kachiroubas*, No. 12-cv-8321, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) (same regarding City's alleged policy or practice of fabricating evidence). Therefore, a finding of municipal liability for this alleged policy or practice is predicated on a finding that the Defendant Officers were liable for some wrong.

Treadwell asserts that "a jury could conclude that an officer other than the named Defendants" fabricated evidence against him and therefore find that this "is indeed a widespread practice within CPD." (Dkt. 180 at 7–8). Treadwell explains that Officer Lisa Torres was falsely "listed in reports as an assisting arresting officer and as a participant in the search" even though she was *not* in fact present during the search or arrest. (*Id.* at 7). Officer Torres also allegedly completed "an inventory sheet that purports to document where in the residence . . . evidence was recovered," again in spite of her absence during the search. (*Id.*). Treadwell opines that these facts establish an independent basis of liability against the City, as in *Rodriguez*, 2018 WL 3474538, where the Court denied a motion to bifurcate. (*Id.*).

9

The theory of municipal liability charged in *Rodriguez* differs from what Treadwell charged here. Rodriguez claimed that Chicago police officers "retaliated and conspired against her for seeking a criminal investigation against" an unidentified officer, "Officer Doe." *Rodriguez*, 2018 WL 3474538, at *3. In support of her *Monell* claim, Rodriguez further alleged that the retaliation was not only a result of the City's "widespread policies, practices, and customs," but was "<u>devised</u>, <u>approved</u> and <u>carried out</u> by individuals with final policymaking authority." *Id.* (emphasis added) (internal quotation marks omitted). Rodriguez also alleged that the City, by and through its agents and employees, "failed and/or attempted to prevent or suppress the disclosure of the identity of [Officer Doe]." *Id.* Given these allegations of the City's direct hand in violating Rodriguez's civil rights, the Court determined it was "not at all clear that the City's liability hinges on a finding that Defendant Officers committed the constitutional violations Rodriguez attributes to them." *Id.* Rodriguez overcame the motion to bifurcate not merely because she "alleged that City employees other than [the named] individual defendants violated her constitutional rights," as Treadwell frames it, (Dkt. 180 at 7) – but because she alleged violations committed by the Defendant City *independent* of any individual officer's actions. Treadwell pled no such facts here. Again, liability for the municipal violations he complains of are, by their nature, predicated on findings of liability against the Defendant Officers. These factual distinctions render Treadwell's citation to *Rodriguez* inapt from the outset.

Furthermore, accepting Treadwell's allegations concerning Officer Torres as true for present purposes, *Monell* only imposes municipal liability for a city's *own* alleged misconduct and is not permitted to be used as a vehicle to impose *respondeat superior* liability. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) ("There is no *respondeat superior* liability under § 1983[.]"); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving

employees are responsible for their own conduct, [whereas] 'units of local government are responsible only for their policies rather than misconduct by their workers.' ") (citing *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom.") (citing *Monell*, 436 U.S. at 694). Allowing Treadwell's claim against Officer Torres to proceed under the guise of a *Monell* action against the City would be improper, as it ultimately amounts to a *respondeat superior* claim. Bifurcation is favored under such circumstances. *See, e.g.*, *Bradford v. City of Chicago*, No. 16-cv-1663, 2019 WL 5208852, at *4 (N.D. Ill. Oct. 16, 2019) (finding risk that "*Monell* would devolve into a *respondeat superior* claim" if tried with claims against the individual officers was "compelling" and one that "counsels in favor of bifurcation.").

Because there is no way that a jury could consistently find the City liable without first finding the Defendant Officers liable, this factor weighs in favor of bifurcation.

### 3. Litigation or Judicial Efficiency and Economy

The City contends that bifurcation would best serve the interests of the litigation and judicial economy. (Dkt. 151 at 8–11). The City avers that allowing the *Monell* claims to proceed will lead to, among other things, costly fact discovery; judicial intervention in discovery disputes arising from the *Monell* claims; and a "trial that undoubtedly will be lengthier, legally and factually more complex, and more susceptible to evidentiary problems that could trigger post-trial motions." (*Id.* at 9–10; *see also* Dkt. 181 at 11–13). In particular, the City points out that Treadwell has requested all documents related to any CPD General Orders, policy manuals, operating procedures, rules, regulations, policies, or practices relating to (1) obtaining and executing search warrants; (2) obtaining information from anonymous or confidential sources; (3) the creation and destruction of

police reports; (4) the purpose of police reports; (5) the production and disclosure of exculpatory evidence; (6) reporting, investigating, identifying, tracking, or reviewing rates of success in obtaining illegal drugs, weapons, or contraband during the execution of search warrants; (7) reporting, investigating, identifying, tracking, or reviewing allegations of officer misconduct; and (8) discipling or supervising officers who engage in misconduct. (Dkt. 151 at 9; *see also* 151-6 ¶ 37). The City explains that "the number and type of documents that arguably fall within the scope of the discovery will be unduly burdensome and the preparation of responses by the City will be expensive and time-consuming," particularly because Treadwell seeks information from 2007 to present. (Dkt. 151 at 9). As such, the City maintains that Treadwell's *Monell* claims will result in "extremely burdensome" discovery that would "likely saddle the City with a financial burden approximating one million dollars or more." (Dkt. 181 at 11–12; *see also* Dkt. 151 at 8–9 (describing costs associated with *Monell* discovery in other cases involving similar claims)). The City also suggests that *Monell* discovery could prolong discovery by more than a year considering the trajectories of previous cases alleging similar claims. (*Id.* at 8–9).

Treadwell counters that bifurcation would "duplicate the proceedings, imposing much larger costs on the Court and the parties," and "inconvenience the witnesses involved." (Dkt. 180 at 8). In particular, he claims that bifurcation would call for two rounds of discovery, two separate stages of dispositive motions briefing, and ultimately two jury trials. (*Id.* at 8–9). Treadwell also asserts – without providing any specific examples or other support – that his requests "*could potentially* become more tailored" since "much of the necessary 'pattern evidence' was *partially* developed in Defendants' criminal cases." (*Id.* at 10 (emphasis added)). Treadwell concludes that these factors warrant against bifurcation. (*Id.*).

Bifurcation can, especially in instances where municipal liability is dependent on individual liability as here, present a number of benefits – including the bypassing of significant discovery (and associated discovery complications) related to the municipality's policies and practices and a shorter trial. *See, e.g.*, *Ezell*, 2019 WL 3776616, at *5–6; *Williams*, 315 F. Supp 3d at 1083; *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). *Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) is instructive on this point. In that case, the Seventh Circuit affirmed the district court's decision to bifurcate the plaintiff's *Monell* claim from her Section 1983 claim alleging malicious prosecution, in part because the City agreed to entry of judgment against itself if Defendant Hochstetler was found liable. *Id.* at 361. The Court held that bifurcation was proper given the City's agreement to enter judgment against itself, and because bifurcation would avoid "the needless costs and burdens of a second trial, as well as, but not limited to, the waste of valuable time and resources of the court, and the inconveniencing of the witnesses." *Id.* at 365. The Court further noted that bifurcation was appropriate because the City's lability was a "derivate of Hochstetler's liability." *Id.*

Those are the same circumstances before this Court. Here, Treadwell's *Monell* claims are dependent on his establishing the liability of the Defendant Officers, and the City has offered a Limited Consent Agreement that awards damages to Treadwell in the event that those individuals are found to have violated his rights, regardless of any immunity arguments they may put forth.[1] (*See* Dkt. 151-C). Accordingly, first addressing the individual claims may eliminate the need to

---

[1] Treadwell contends that the City's proffered "Limited Consent to Entry of Judgment" should be disregarded because it is procedurally flawed. He argues that that the Consent is not a Rule 68 offer of judgment, a Rule 16 stipulation, or an otherwise permissible pleading. (Dkt. No. 180 at 13). However, as the City points out in its briefing, the Consent is an agreement to accept judgment if the jury finds any individual defendant liable. (*See* Dkt. No. 151 at 10–11). The Consent also purports to satisfy all of Treadwell's demands. It assures that the City will pay compensatory damages and attorneys' fees if he prevails on his predicate claims against the Defendant Officers. (*Compare* Dkt. 99 at 20 (setting forth Plaintiff's requested relief against Defendant City), *with* Dkt. 151-C ¶ 4 (setting forth City's consent to satisfy those requests if Defendant Officers are found guilty)). Such agreements have been considered and accepted by other courts. *See e.g.*, *Saunders*, 146 F. Supp. 3d at 970.

proceed to the *Monell* claims at all. Bifurcation may also significantly expedite litigation of the individual claims themselves. This is because instead of litigating broad questions about the City's disciplinary policies, for example, the parties can focus on establishing what happened to Treadwell and whether it violated his constitutional rights. By thus limiting the scope of this stage of litigation, it is possible to resolve requisite threshold issues more quickly.[2] *See, e.g.*, *Ackerman v. Allen*, No. 16-cv-6199, 2017 WL 1536447, at *5 (N.D. Ill. Apr. 27, 2017). It is in the interest of litigation and judicial economy to bifurcate Treadwell's *Monell* claims since the resource-heavy discovery process and litigation of those claims are unnecessary to his recovery due to the Limited Consent form. *E.g.*, *Blackmon v. City of Chicago*, No. 19-cv-767, 2020 WL 1888913, at *6 (N.D. Ill. Apr. 16, 2020); *Bradford*, 2019 WL 5208852, at *5; *Ezell*, 2019 WL 3776616, at *6; *Williams*, 315 F. Supp. 3d at 1083; *Andersen*, 2016 WL 7240765, at *4–5.

Treadwell additionally argues that there are "important, non-monetary" reasons not to grant bifurcation. (Dkt. 180 at 3, 14). He explains that by fully litigating his *Monell* claims, he seeks to "secure significant and meaningful reform" to the City's unconstitutional policies and practices alleged here. (*Id.* at 14–15 ("*Monell* discovery will give Plaintiff an opportunity to expose the widespread systemic failures of the City and to encourage reforms of unconstitutional policies and practices.")). Treadwell assuredly has strong reasons for wanting to pursue his *Monell* claims. However, he seeks only money damages in this action, and bifurcation will not impede his ability to recover fully with a proper showing of constitutional injury. Further, because the City will pay any compensatory damages awarded to Treadwell, along with attorneys' fees, the City may feel an incentive to alter certain policies and practices should Treadwell prevail. Treadwell fails to

---

[2] Expediting the litigation in this way also aligns with Treadwell's recent request to set "the earliest practicable trial date after the close of expert discovery on February 17, 2022." (Dkt. 182; *contra* Dkt. 151 at 8–9 (demonstrating that discovery on *Monell* claims in similar cases has taken more than a year)).

show that a judgment entered in this case against the City via the Limited Consent agreement would *not* adequately deter against future misconduct. *See, e.g.*, *Williams*, 315 F. Supp. 3d at 1084 ("[Plaintiff's] complaint does not limit any extraordinarily large judgment to his *Monell* claim; instead, it is entirely possible that [he] could be awarded a large judgment against the Officers, which presumably send the same message to the City and police department."); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 935 (N. D. Ill. Nov. 8, 2012) (explaining that compensatory damages may lead the City "to feel an incentive to change," and noting that plaintiffs "may choose to pursue the *Monell* claims, if there is anything more to pursue, after the claims against Defendant Officers are resolved"); *Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007) ("If a constitutional violation occurred, then the City pays. . . . [T]hat is all Owen requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages."). *See also, e.g.*, *Blackmon*, 2020 WL 1888913, at *6 ("[T]he *Monell* claims are unnecessary to [plaintiff's] recovery due to the Amended Limited Consent form. [Plaintiff's] claims for compensatory damages can be resolved without ever delving into the *Monell* claims."); *Ezell*, 2019 WL 3776616, at *6.

Approaching the City's motion with a "pragmatic mindset," as we must at this stage of the litigation, bifurcation is appropriate in this case. *See, e.g.*, *Allison*, 2012 WL 4760863, at *1.

**4. Prejudice to the Parties**

Having found that the Rule 42(b) criteria are met, bifurcation is appropriate as long as it will not prejudice the non-moving party or violate the Seventh Amendment. *Anderson*, 2016 WL 7240765, at *5 (citing *Treece*, 213 F.3d at 365). To begin, the City argues in favor of bifurcation on the basis that a unitary trial risks prejudicing all Defendants. (Dkt. 151 at 11–15). In particular,

15

the City states that bifurcation would protect the Defendant Officers "from possible prejudice caused by the introduction of extensive and extraneous evidence regarding alleged misconduct in which they were not involved." (*Id.* at 12 (explaining that such evidence could "serve[] as an invitation to the jury to find the [Defendant Officers] guilty by association, rather than deciding liability based on their own actions")). The City further argues that allowing the case to move forward as a whole would prejudice the City given Defendant Officers' recent criminal convictions following a "highly publicized media trial," which included similar allegations as those charged by Treadwell. (*Id.* at 13 (noting the criminal indictments alleged Defendant Officers submitted false search warrant applications and induced informants to provide false information to judges)).

However, it is premature to raise these concerns of prejudice at trial at this stage. *Anderson*, 2016 WL 7240765, at *5 n.6. There are a number of tools the Court can use – including limiting instructions, motions *in limine*, and others – to limit any such prejudice, and the Court could assess the propriety of bifurcating the trial at a later date if those tools are inadequate. *Id.* Thus, as it stands, "prejudice at trial does not militate in favor of bifurcation at this time." *Id. See also, e.g.*, *Blackmon*, 2020 WL 1888913, at *6; *Jackson v. City of Chicago*, No. 14-cv-6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and *Monell* claims together] is shortly before trial[.]"); *Estate of McIntosh v. City of Chicago*, No. 15-cv-1920, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015) (finding undue prejudice analysis "premature and too speculative" at the early stages of the case); *Giles v. Ludwig*, No. 12–cv–6746, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2016) (explaining that limiting instructions, motions *in limine*, and the Rules of Evidence would suffice to mitigate prejudice arising from a unitary trial).

For his part, Treadwell suggests bifurcation would prejudice his case because the jury ought to "consider the entire picture of what [he] alleges happened to him" to allow them "to determine whether any or all of Defendants' conduct . . . violated the law." (Dkt. 180 at 12 (quoting *Garcia v. Ramirez*, 2021 WL 1253448, at *3 (N.D. Ill. April 5, 2021)).   This position is unpersuasive.  As discussed above, the Defendant Officers must be found liable for a constitutional violation before the City may be held liable under *Monell*.  In addition, "[m]isbehaving employees are responsible for their own conduct."  *Lewis*, 496 F.3d at 656.  Treadwell's *Monell* claims thus could be bifurcated without prejudicing his case, since those claims will not assist the jury in determining predicate causes of action against Defendant Officers.  Moreover, bifurcation would have no effect on the recovery he seeks.  As discussed, if the Individual Defendants are found to have violated Treadwell's constitutional rights, the Limited Consent will result in judgment against the City for compensatory damages and reasonable attorneys' fees.  (*See* Dkt. 151-C).

Next, Treadwell argues that bifurcation would violate his Seventh Amendment rights because "it is likely that two separate juries would have to consider some of the same issues." (Dkt. 180 at 13).  Specifically, "both juries would have to answer whether and how [his] constitutional rights were violated by the fabrication of evidence and arrest without probable cause."  (*Id.*).  The Seventh Amendment provides that: "In suits at common law . . .  the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined."  U.S. CONST. AMEND. VII.  "Questions in a single suit 'can only be tried by different juries if they are so distinct and separable from the others that a trial of them alone may be had without injustice.' "  *See, e.g.*, *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-cv-9312, 2016 WL 6833912, at *6 (N.D. Ill. Nov. 21, 2016) (citing *Houseman*, 171 F.3d at 1126).  Even should Treadwell have any basis to further pursue his *Monell* claims after a finding against the Defendant Officers, it would not raise

17

a Seventh Amendment concern. Although Treadwell's claims against the Defendant Officers and the City are based on some overlapping facts, they involve different theories of liability. As such, the Seventh Amendment does not preclude bifurcation here. *See Houseman*, 171 F.3d at 1128 ("Because the two juries were asked to decide distinct questions, and because the second jury could not have re-examined the conclusions of the first, the Seventh Amendment was not offended by the bifurcation order.").

Bifurcation will neither prejudice litigation of Treadwell's claims nor imperil his rights under the Seventh Amendment. These findings weigh in favor of bifurcation.

## CONCLUSION

For the reasons stated above, the City's motion to bifurcate Treadwell's *Monell* claims, stay discovery and trial on those claims, and enter the City's proposed Limited Consent [151] is granted.

Virginia M. Kendall
United States District Judge

Date: January 28, 2022

18